RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE  9 / 12 / 12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


| | |
|---|---|
| STAFFORD WAYNE DAUZAT,<br>　　　　Appellant | CIVIL ACTION<br>1:11-cv-1831 |
| VERSUS | |
| U.S. COMMISSIONER OF SOCIAL<br>SECURITY,<br>　　　　Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE


Stafford Wayne Dauzat ("Dauzat") was 55 years old when he filed an application for supplemental security income benefits ("SSI") on June 24, 2009, alleging a disability onset date of November 9, 2007 (Tr. p. 128) because he is going blind and has three bad discs in his back, swelling feet, and diabetic blackouts (Tr. p. 163). That application was denied by the Social Security Administration ("SSA") (Tr. p. 80).

A de novo hearing was held before an administrative law judge ("ALJ") on June 18, 2010 at which Dauzat appeared with his attorney, a witness, and a vocational expert ("VE") (Tr. p. 32). The ALJ found that, although Dauzat suffers from severe impairments of back pain, very early peripheral neuropathy, and right eye blindness, he has the residual functional capacity to perform the full range of medium work (Tr. p. 22) and can do his past relevant

work as an automobile mechanic (Tr. p. 25). The ALJ concluded that Dauzat was not under a disability as defined by the Social Security Act at any time from June 12, 2009 (the date the application was filed) through the date of his decision on August 16, 2010 (Tr. pp. 25-26).

Dauzat requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Dauzat next filed this appeal for judicial review of the Commissioner's final decision. Dauzat raises the following grounds for relief on appeal:

> 1. The ALJ erred in failing to find that diabetes is a severe impairment at Step 2.
>
> 2. The ALJ erred in omitting all discussion of the medical evidence regarding Dauzat's diabetes treatment.
>
> 3. The ALJ erred in failing to properly consider the effect of Dauzat's diabetes when assessing his residual functional capacity and throughout the remainder of the sequential evaluation process.
>
> 4. The ALJ erred in failing to properly evaluate the medical opinion evidence.
>
> 5. The ALJ's residual functional capacity assessment is not supported by substantial evidence because it omits a functional limitation specifically noted by an examining doctor.

## Summary of Pertinent Facts

Dauzat was 55 years old when he applied for supplemental security income benefits (Tr. p. 128), had a ninth grade education (Tr. p. 36), and had past relevant work as an oil field worker, a zoo maintenance worker, and a mechanic (Tr. p. 150).

1. Medical Records

In April 2007, Dauzat was treated in the emergency room for head trauma sustained when he slipped and fell, hitting the right side of his head (Tr. pp. 218-221, 268-275). A CT scan of Dauzat's head was normal (Tr. p. 222).

In November 2007, Dauzat went to a walk-in medical clinic because he felt weak; Dauzat had an elevated glucose level, hypertension, and high triglycerides, and was referred to another doctor for a diabetes checkup (Tr. pp. 286-289). It was noted that Dauzat reported he had not been to a doctor in twenty years (Tr. p. 287).

In August 2009, Dauzat was evaluated by Dr. Irene Ngantcha at the request of Louisiana Disability Determination Services (Tr. p. 234). Dr. Ngantcha noted Dauzat was 55 years old, had been involved in an offshore accident about twenty years ago where he sustained a back injury and he had back pain that had increased in severity over the years. Dr. Ngantcha noted that Dauzat's back pain had become severe in the last two years, was mostly in the lower back radiating to both feet, was exacerbated by sitting more than ten minutes or standing for long periods of time, and was relieved by taking BC Powder (Tr. p. 234). Dauzat further reported that he was diagnosed with diabetes two years ago, had lost 70 pounds unintentionally in the last year, and did not see a physician or receive treatment for his diabetes because he could not afford to (Tr. p. 234). Dauzat complained of blurry vision bilaterally, worse on the right, numbness and tingling in both

3

feet, and daily throbbing headaches which he controlled with BC Powder (Tr. p. 234). Dauzat stated he could sit for about fifteen minutes, stand for about thirty minutes, walk on level ground for about half a block, lift ten pounds, drive a car, sweep, mop, vacuum, cook, do dishes, shop, walk up stairs, and mow grass (Tr. p. 235). Dauzat also reported that, in 2007, he had a syncopal[1] episode secondary to diabetes (Tr. p. 235). Dr. Ngantcha found Dauzat was 5'9" tall, weighed 180 pounds, and his blood pressure was 145/74 (Tr. p. 236). Dr. Ngantcha further found that Dauzat could walk without difficulty, get on and off the exam table without difficulty, get up and out of the chair without difficulty, dress and undress without difficulty, and converse in a normal voice understandably (Tr. p. 236). Dauzat's visual acuity was 20/70 on the left and could not be measured on the right due to blurriness; Dauzat did not have glasses (Tr. p. 236). Dauzat's gait was normal, his grip was 5/5 bilaterally, and he could button, zip and pick up a coin (Tr. p. 236). Dauzat's lumbar x-rays and foot x-rays were all normal, but flexion in his lumbar spine was decreased, his hip flexion and rotation were decreased bilaterally, abduction and extension were decreased, and straight leg raising was decreased; Dauzat could walk and squat without difficulty (Tr. p. 237). Dauzat had decreased sensation to the plantar surface of

---

[1] Loss of consciousness resulting from insufficient blood flow to the brain. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Syncope, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

both feet with a decreased vibratory sense (Tr. p. 237). Dr. Ngantcha concluded that Dauzat was at risk for developing diabetes ketoacidosis, and needed a full work up to check for other evidence of end organ damage related to diabetes (Tr. p. 193). Dr. Ngantcha also stated that she did not find anything on physical examination to support the conclusion that he is disabled, although any of his medical problems could result in significant disability (Tr. p. 193).

Later in August 2009, Dauzat was examined by Dr. Niranjan Patel for complaints of nausea and abdominal pain; Dr. Patel sent Dauzat to the emergency room (Tr. p. 298). At the hospital, it was determined that Dauzat had an abnormal gall bladder wall and gall stones (Tr. p. 307). On a follow-up examination with Dr. Patel, Dauzat was diagnosed with gall bladder stones and diabetes and was prescribed Metformin (for diabetes) and Percocet (for pain), and was placed on a low fat diet (Tr. pp. 295-296).

Dauzat's vision was measured by an optometrist, Gerdes, in September 2009, who found Dauzat's vision was 20/400 OD and 20/80 OS without correction, and 20/200 OD and 20/40 OS with correction (Tr. pp. 239, 292). The optometrist did find that Dauzat had diabetic retinopathy and found his right eye vision loss was non-organic (Tr. pp. 239, 292).

Dauzat was agin examined in March 2010 for diabetes mellitus and left knee pain (Tr. p. 314). It was noted that Dauzat smoked two packs of cigarettes a day, was 5'9" tall and weighed 175.6 pounds, and his blood pressure was 125/75 (Tr. p. 314). Dauzat was

diagnosed with diabetes mellitus, type two, dry skin, chronic smoking, possible peripheral vascular disease (PVD), chronic pain (possible osteoarthritis), diabetic neuropathy, and hyperlipidemia (high cholesterol) (Tr. p. 314). X-rays of Dauzat's left knee and chest were normal in April 2010 (Tr. p. 313). Dauzat was prescribed Amitryptiline, Tylenol, HCT 2 (a diuretic), Neurontin, Elavil, and blood glucose test supplies (Tr. pp. 312-13).

2. 2010 Administrative Hearing

At his June 18, 2010 administrative hearing, Dauzat testified that he did not work in 2009 or 2010, and he gets his medical care and medications from Huey P. Long Medical Center (Tr. pp. 36-37).

Dauzat testified that he worked as an automobile mechanic at a tire store, he has been a self-employed mechanic (working on cars and trucks), and he worked as a motor man on a land drilling rig (Tr. pp. 37-38).

The VE testified that Dauzat's work as an automobile mechanic (DOT 620.261-010) was medium, skilled work (Tr. pp. 38-39) and his work as an oil field motorman on a land rig (DOT 930.685-010) was semi-skilled, heavy work (Tr. p. 39).

When the ALJ asked the VE what other work Dauzat could do with his mechanic's skills (the ALJ did not pose a hypothetical question), the VE testified that Dauzat could work as a sub-assembler of electronic equipment (DOT 729.684-054, light, semi-skilled work, SVP-5, 1027 sedentary jobs in Louisiana, 5,094 light duty jobs in Louisiana, 152,054 sedentary jobs nationally, and 525,165 light duty jobs nationally), or as a production inspector

6

(DOT 789.507-014, SVP 5, light duty, 898 sedentary jobs in Louisiana, 55,572 light duty jobs in Louisiana, 388,708 sedentary jobs nationally, and 519,534 light duty jobs nationally) (Tr. pp. 40-41).

Dauzat then testified that he no longer has a driver's license; he stopped driving after he was charged with DWI five years ago (Tr. p. 42). Dauzat testified that he drinks a beer with his friends when they visit (Tr. p. 42). Dauzat testified that he has not worked full time in three or four years (Tr. p. 43). Dauzat's wife has two jobs and supports them (Tr. p. 43). Dauzat testified that he cannot work because he doesn't have the strength, he cannot sleep at night because he wakes three or four times to go to the bathroom, and his legs tremble and his feet swell when he lays down at night (Tr. pp. 44, 52). Dauzat testified that his doctor gave him a sleep aid (Tr. p. 44) and he takes oral medicine for his diabetes (Tr. p. 45). Dauzat testified that he used to weigh about 270 pounds, but lost weight in the last three years, down to 168 pounds (Tr. p. 45). Dauzat testified he does not know why he lost weight and is scheduled for a colonoscopy in one month (Tr. pp. 45-47). Dauzat also testified that his doctor has scheduled him for more tests to determine why his legs hurt (Tr. p. 48). Dauzat testified that his doctor told him to elevate his legs when they hurt, and to alternate sitting and standing (Tr. p. 48). Dauzat testified that his legs hurt if he sits too long or stands too long (Tr. p. 48). Dauzat testified that he is not on a special diet, and he eats like he always has, but he is still losing weight

(Tr. p. 48). When the ALJ asked whether Dauzat had taken a pulmonary function test, due to the facts that he smoked and had lost a lot of weight, he responded that he had not (Tr. p. 76).

Dauzat testified that he has tried and can no longer change a tire, and he has tried to do mechanical work but can no longer do it, either, because he cannot pick up parts, due mostly to weakness and partly to back pain (Tr. p. 49). Dauzat testified that he used to support his family and pay his bills, and that all four of his children were grown and had moved out (Tr. p. 50). Dauzat testified that he could not do light work as an assembler because he cannot stand for up to six hours in an eight-hour day; his legs get weak and hurt and he has to sit down (Tr. p. 51). Dauzat is supposed to elevate his legs whenever they hurt badly (Tr. p. 52). Dauzat testified that he could not do light level work because of the pain caused by having to stand too long, even if he had two fifteen minute breaks and a thirty minute lunch (Tr. pp. 52-53).

Dauzat testified that, on an average day, he sits outside, then he sits inside (Tr. p. 50). Dauzat testified that he has never been fired from a job due to drinking, he has never been drunk at work, and he went to work every day (Tr. pp. 50-51). Dauzat testified that he drank socially, once in a while to excess (Tr. p. 51).

Dauzat testified that he takes medicine for his blood pressure, his diabetes, and to help him sleep, and he takes BC Powder when he has pain (Tr. p. 53). Dauzat testified that he takes a lot of BC Powder (Tr. p. 53). Dauzat said that, although

he may still hurt after he takes a BC Powder, he can live with it (Tr. p. 57).

Dauzat testified that his disability evaluation with Dr. Ngantcha took about twenty minutes, and part of that time was spent answering questions (Tr. pp. 55-56). Dauzat testified that his wife drove him to the doctor's office; either his wife or one of his daughters usually drives him to doctor appointments (Tr. p. 56). Dauzat testified that he goes to all of his doctor appointments (Tr. p. 61); previously, Dauzat did not go to a doctor unless he had a problem (Tr. p. 61).

Dauzat testified that his wife does most of the cooking; he can put something on the stove and watch it, but cannot stand up at the stove or sink more than ten minutes before he has to sit down (Tr. p. 57). Dauzat testified that his wife does the grocery shopping (Tr. p. 59). Dauzat testified that he is depressed because his wife has to do so much, and he wishes he could work and let his wife stay home (Tr. p. 60).

Dauzat testified that his fingers sometimes hurt and sometimes he has trouble gripping things, but he does not have trouble picking things up because he slides them off the table top to grasp them, rather than pinching them; he has trouble with his fine motor skills (Tr. pp. 58-59).

Dauzat testified that he stopped working at D&J Tire because they wanted him to transfer to the Tioga shop, and he did not want to work there (Tr. p. 63).

Dauzat's wife, Bobbie Dauzat ("Bobbie") testified that she and

Dauzat have been married 35 years, and that she used to stay home while he worked (Tr. p. 65); now, Bobbie works two jobs and does the shopping and cooking (Tr. p. 65).

Bobbie testified that Dauzat always held a job until his back started hurting too much and his legs began swelling (Tr. p. 66). Bobbie testified that Dauzat has to have help picking things up and needs help getting up if he stoops over (Tr. pp. 66-67). Bobbie testified that Dauzat has had back problems for several years, but just took a lot of BC Powder and coped with the pain (Tr. p. 67). Bobbie testified that Dauzat's legs swell and get "big old knots," his feet get blisters and sores which disappear then return, and his feet hurt all of the time (Tr. p. 67). Dauzat's feet also swell, then his legs get knots in them, then they start hurting (Tr. p. 68). Bobbie testified that Dauzat has to elevate his legs sometimes, then has to rub his feet because they tingle or hurt (Tr. pp. 68-69). Bobbie also testified that Dauzat does not sleep well because he has to get up a lot due to discomfort (Tr. p. 69).

Bobbie testified that she takes Dauzat to his doctor appointments most of the time (Tr. p. 69). Bobbie testified that Dauzat has had drastic changes in the last couple of years; other than weight loss, Dauzat has trouble understanding things and does not have any strength (Tr. p. 72). Bobbie testified that, if Dauzat checks the oil in her car, she has to raise the hood and put it back (Tr. pp. 73-74).

Bobbie testified that Dauzat's blood sugar stays very elevated and has never been below 205 (Tr. p. 72). Bobbie testified that

10

sometimes Dauzat forgets to take his medicine, but he tests his blood sugar and goes to his medical appointments (Tr. pp. 72-73). Bobbie reminds him to take his medicines (Tr. p. 74). Bobbie testified that Dauzat was diagnosed with diabetes about a year before (Tr. p. 73).

Dauzat's attorney posed a hypothetical to the VE concerning a man of Dauzat's age and education, with the assumption that the testimony from Dauzat and his wife was true and correct, and asked whether that man could return to his previous work as an auto mechanic, tire changer or motor man (Tr. p. 75). The VE responded that such a person could not do those jobs (Tr. p. 75). In response to Dauzat's attorney's question as to whether that person could do any other jobs in the national economy, the VE replied he could not (Tr. p. 75).

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Dauzat (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and

11

terminates the analysis.  Greenspan v. Shalala, 38 F.3d 232, 236 (5ᵗʰ Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Dauzat has not engaged in substantial gainful activity since June 12, 2009 and that he has severe impairments of back pain, very early peripheral neuropathy, and right eye blindness, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 22).  The ALJ then found that, as of August 16, 2010, Dauzat was still able to perform his past relevant work as an automobile mechanic (Tr. pp. 25-26).  The sequential analysis thus ended at Step 4, with a finding that Dauzat was not disabled (Tr. p. 21).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether

there were any prejudicial legal errors. <u>McQueen v. Apfel</u>, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. <u>Falco v. Shalala</u>, 27 F.3d 160, 162 (5th Cir. 1994), citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. <u>Singletary v. Bowen</u>, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical

13

evidence."   Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988);

Dellolio, 705 F.2d at 125.

Law and Analysis

Issues 1 - Severe Impairments

First, Dauzat contends the ALJ erred in failing to find that

diabetes is a severe impairment at Step 2.

An impairment can be considered as not "severe" only if it is

a slight abnormality which has such a minimal effect on the

claimant that it would not be expected to interfere with the

individual's ability to work, irrespective of age, education or

work experience.  Estran v. Heckler, 745 F. 2d 340, 341 (5th Cir.

1984).  See also, Anthony v. Sullivan, 954 F.2d 289 (5th Cir. 1992).

In Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), the Fifth

Circuit noted that an impairment can be considered as not "severe"

only if it is a slight abnormality which has such a minimal effect

on the claimant that it *would not affect his ability to work*.  The

Fifth Circuit concluded that it would in the future assume the ALJ

and Appeals Council have applied an incorrect standard to the

severity requirement unless the correct standard is set forth by

reference to the Stone opinion or another of the same effect, or by

an express statement that the construction the Fifth Circuit gave

to 20 C.F.R. § 404.1520(c) (1984) is used.  Unless the correct

standard is used, the claim must be remanded to the Commissioner

for reconsideration.  Stone, 752 F.2d at 1106.

The ALJ did not find Dauzat's diabetes to be either severe or

14

non-severe, did not consider Listing 9.08 (Diabetes mellitus),[2] did not consider diabetes in determining Dauzat's residual function capacity, and made no reference to Stone or its progeny.

Instead, the ALJ cited 20 C.F.R. § 416.920(c), stating that an impairment is "not severe" if it has "no more than a minimal effect on an individual's ability to work" (Tr. p. 21). That is the incorrect standard. Stone provides no allowance for a minimal interference on a claimant's ability to work. Stone states that a severe impairment "would not be expected to interfere with the individual's ability to work. Scroggins v. Astrue, 598 F.Supp.2d 800, 805-806 (N.D.Tex. 2009). Therefore, the ALJ clearly applied the incorrect legal standard for determining the severity of an impairment.[3]

Since the incorrect legal standard was applied to determine the severity of Dauzat's impairments, substantial evidence does not support the ALJ's conclusion that Dauzat is not disabled. Since

---

[2] See 20 C.F.R. § 404, Subpart P, Appendix 1. If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987).

[3] It is clear from the sparse medical records that Dauzat suffers from diabetes. Dauzat takes medication for diabetes and tests his blood glucose. There is evidence that Dauzat's diabetes appears to be causing him multiple problems, including weight loss, fatigue, sores on his feet, confusion, vision loss, and neuropathy. Dauzat's wife testified that Dauzat takes his medication but sometimes forgets to do so, that she reminds him to take his medication, and that 205 was the lowest level his glucose has attained. See MEDLINEplus Health Information, Medical Encyclopedia: Type 2 diabetes and Long term complications of diabetes, available at http://www.nlm.nih.gov/medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. See <u>Loza v. Apfel</u>, 219 F.3d 378, 392-393 (5th Cir. 2000)(reversal required for error of law where ALJ did not set forth or refer to the severity standard in <u>Stone</u>, triggering the assumption that the ALJ applied an incorrect legal standard to the severity requirement); <u>Scroggins</u>, 598 F.Supp.2d at 800, 805-806.

<u>Issues 2-5 - Residual Functional Capacity</u>

Dauzat also contends the ALJ erred in omitting all discussion of the medical evidence regarding Dauzat's diabetes treatment, in failing to properly consider the effect of Dauzat's diabetes when assessing his residual functional capacity and throughout the remainder of the sequential evaluation process, and in failing to properly evaluate the medical opinion evidence. Dauzat also argues the ALJ's residual functional capacity assessment is not supported by substantial evidence because it omits a functional limitation specifically noted by an examining doctor.

Since this case must be remanded to the Commissioner for consideration under the correct legal standard of whether Dauzat's diabetes is a severe impairment and reconsideration of his residual functional capacity, it is unnecessary for the court to consider these issues at this time.

However, the undersigned finds it noteworthy that the ALJ in this case found Dauzat suffers from nonexertional impairments, yet failed to properly utilize the VE. The Fifth Circuit has consistently held that once the ALJ determines that a claimant

suffers from a nonexertional impairment that prevents him from performing his past relevant work, the Commissioner must produce expert vocational testimony or other similar evidence to establish that other jobs exist in the national economy that the claimant can perform.  Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986), and cases cited therein.  Although the Guidelines can be used to determine disability, provided that the nonexertional impairments do not significantly diminish the claimant's residual capacity to perform the activities listed in them, Evans v. Chater, 84 F.3d 1054, 1056 (8th Cir. 1996), and cases cited therein, the ALJ did not discuss whether that was appropriate in this case.

Moreover, although the ALJ questioned the VE, he improperly questioned the VE before the claimant and his witness testified, and failed to pose any hypothetical questions to the VE, leaving the VE free to make whatever assumptions he wanted to make, as to the claimant's functional capacity, in answering the ALJ.[4]  That type of testimony from the VE, given before the claimant testifies and without a hypothetical question providing a functional capacity framework on which the VE can base his testimony, does not constitute substantial evidence which supports a finding of not disabled.  See  Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994).

Finally, it is noted that the ALJ did not specifically

---

[4] Initially, the VE testified as to light and sedentary level jobs that Dauzat could do, given his skills.  However, after hearing the testimony of Dauzat and his wife, and assuming their testimony was true and correct, the VE stated there were no jobs which Dauzat could perform.

consider the effect of Dauzat's right eye blindness on  his ability to perform his past relevant work as an auto mechanic, instead noting that he still had 20/40 vision (with correction) in his left eye (Tr. p. 24).  It is also noted that Dauzat was not examined by an ophthalmologist, a field of vision examination was not performed, and visual efficiency was not determined (to determine whether Dauzat meets Listing 9.08).

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law.  However, this does not entitle Dauzat to a decision in his favor based upon the existing record.  The record is simply inconclusive as to what Dauzat's true impairments are, whether Dauzat can perform his past relevant work, and whether there are any jobs existing in sufficient numbers in the national economy which Dauzat can perform, given his true impairments.  Therefore, Dauzat's case should be remanded to the Commissioner for further proceedings.

It will also be recommended that additional medical evidence be considered due to the sparsity of the record and the fact that Dauzat testified at his administrative hearing that he had been scheduled for further tests; the ALJ failed to leave the record open for inclusion of their results.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Dauzat's case be REMANDED to the Commissioner for further proceedings.

IT IS FURTHER RECOMMENDED that additional medical evidence be considered on remand.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN fourteen(14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 11th day of September 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE